1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11 | CRISTIAN STEVE HERAS MORALES,          | Case No. 1:23-cv-01283-JLT-EPG-HC

12 |            Petitioner,                 | FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO

13 |       v.                               | DISMISS AND DENY PETITION FOR WRIT OF HABEAS CORPUS

14 | M. ARVIZA,

15 |            Respondent.                 | (ECF No. 15)

16

17      Petitioner Cristian Steve Heras Morales is a federal prisoner proceeding *pro se* with a

18 petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that the Federal Bureau

19 of Prisons is withholding proper application of jail credit. For the reasons discussed herein, the

20 undersigned recommends denying Respondent's motion to dismiss and denying the petition for

21 writ of habeas corpus.

22                                          **I.**

23                                    **BACKGROUND**

24      Petitioner currently is in the custody of the Federal Bureau of Prisons ("BOP") at the

25 Federal Correctional Institution in Mendota, California ("FCI Mendota"). (ECF No. 1 at 1.[1]) On

26 July 3, 2020, federal authorities arrested Petitioner as he applied for entry into the United States

27 from Mexico at the San Ysidro port of entry in San Diego, California. Authorities discovered

28 _____
[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1  methamphetamine during the search of Petitioner's motor vehicle. On July 4, 2020, federal

2  authorities released Petitioner on his own recognizance with a notice to appear before a United

3  States Magistrate Judge on July 15, 2020. (Gandy Decl. 2 ¶ 3, Attach. 1–2, ECF No. 15-1.) On

4  July 15, 2020, Petitioner appeared before a magistrate judge in the United States District Court

5  for the Southern District of California, posted a $20,000 bond, and was released. (Gandy Decl. 2

6  ¶ 4, Attach. 4.)

7       On August 10, 2020, local authorities arrested Petitioner in Los Angeles County. (Gandy

8  Decl. 2 ¶ 5.) On July 12, 2021, the Los Angeles Superior Court sentenced Petitioner to the

9  following: four-year term of imprisonment for a parole violation in Case No. VA 149078-01;

10  339-day term of imprisonment for a parole violation in Case No. 9DN00235; and a 264-day term

11  of imprisonment for DUI charges in Case No. 0DN04649. Petitioner received 678 days of prior

12  custody credit on his sentences. (Gandy Decl. 2 ¶ 6.)

13       On October 15, 2021, Petitioner was transferred to the custody of the United States

14  Marshals Service ("USMS") via a writ of habeas corpus ad prosequendum. (Gandy Decl. 3 ¶ 7.)

15  Petitioner pleaded guilty to importation of methamphetamine, and on June 8, 2022, the United

16  States District Court for the Southern District of California sentenced Petitioner to an

17  imprisonment term of twenty-four months. (Gandy Decl. Attach. 9.)

18       On June 26, 2023, Petitioner filed the instant § 2241 habeas petition in the United States

19  District Court for the Southern District of California. (ECF No. 1.) On August 22, 2023, the

20  Southern District of California ordered that the petition be transferred to this Court. (ECF No. 5.)

21  On December 18, 2023, Respondent filed a motion to dismiss the petition for nonexhaustion.

22  (ECF No. 15 at 3–4.) Respondent also argued that the petition should be denied on the merits.

23  (Id. at 3.) On March 13, 2024,[2] the undersigned issued findings and recommendation

24  recommending that Respondent's motion to dismiss be granted based on nonexhaustion. (ECF

25  No. 17.)

26  ///

27

28  [2] The findings and recommendation was signed on March 12, 2024, but not docketed until March 13, 2024.

1    On March 19 and April 3, 2024, the Court received Petitioner's objections. (ECF Nos.

2  18, 19.) In light of Petitioner's objections, the undersigned vacated the findings and

3  recommendation and ordered supplemental briefing. (ECF No. 20.) On April 26, 2024, Petitioner

4  filed a supplemental brief. (ECF No. 21.) On May 20, 2024, Respondent filed a supplemental

5  brief. (ECF No. 23.)

6                                              **II.**

7                                        **DISCUSSION**

8    **A.  Exhaustion**

9    "As a prudential matter, courts require that habeas petitioners exhaust all available

10  judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678

11  F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional

12  prerequisite, exhaustion can be waived. Id. (citations omitted). "Exhaustion is not required if: (1)

13  administrative remedies would be futile; (2) the actions of the agency clearly and unambiguously

14  violate statutory or constitutional rights; or (3) the administrative procedure is clearly shown to

15  be inadequate to prevent irreparable injury." Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir.

16  1991).

17    The BOP grievance process is set forth at 28 C.F.R. § 542.10 *et seq*. "As a first step in

18  this process, an inmate normally must present his complaint informally to prison staff using a

19  BP–8 form." Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010).  "If the informal complaint

20  does not resolve the dispute, the inmate may make an 'Administrative Remedy Request'

21  concerning the dispute to the prison Warden using a BP–9 form." Nunez, 591 F.3d 1219. "If the

22  Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional

23  Director using a BP–10 form." Nunez, 591 F.3d 1219. "The inmate may appeal an adverse

24  decision by the Regional Director to the Central Office (also called the General Counsel) of the

25  BOP using a BP–11 form." Nunez, 591 F.3d 1219. A final decision from the Office of General

26  Counsel completes the BOP's administrative remedy process. 28 C.F.R. § 542.15(a).

27    Respondent argues that dismissal of the petition is warranted because Petitioner failed to

28  exhaust the administrative remedy process to either the BOP's regional or general counsel. (ECF

3

1 No. 15 at 4.) In the petition, Petitioner states that he filed BP–8 and BP–9 forms. (ECF No. 1 at

2 2–3.) Petitioner did not pursue further administrative appeals to the Regional Director or General

3 Counsel because the BP–9 "was rejected based on false pretense claiming [Petitioner] did not file

4 a BP 8 which is not true." (Id. at 4.) In his objections, Petitioner explained:

> I filed a BP8 for my miscalculation on my time credit and they did
> not resolve my dispute so I filed a BP9 to the Warden in my prison
> for my miscalculations of time credit and they still didn't resolve
> my dispute . . . . So after that I filed a BP–10 to Western Region
> stating about [sic] my federal time credit . . . and they never gave
> me a response. After 3 weeks I sent that BP–10 I sent another one
> to Western Region and a month pass[ed] and I never got any
> response so I just gave up and I filed this 2241 motion.

10 (ECF No. 18.) The Court assumes, without deciding, that Petitioner's failure to properly exhaust

11 administrative remedies can be excused and will address the merits of Petitioner's claim.

12 **B.  Merits**

13 Petitioner asserts that his federal sentence started on October 15, 2021, when he was

14 transferred to federal custody, and the sentencing judge credited Petitioner eight months towards

15 his federal sentence. Petitioner contends that the BOP is violating the federal judgment and

16 withholding proper application of credit. (ECF No. 1 at 5.) Respondent contends that the state

17 maintained primary jurisdiction of Petitioner between October 15, 2021 and August 7, 2022,

18 Petitioner received state custody credit for this period, and the federal sentencing judge "refused

19 to interfere with BOP's exclusive authority to determine credit offsets." (ECF No. 15 at 3.)

20 "Title 18 U.S.C. § 3585 governs the calculation of the length of a federal criminal

21 sentence." Zavala v. Ives, 785 F.3d 367, 370 (9th Cir. 2015). "Under the statute, a term of

22 imprisonment begins 'on the date the defendant is received in custody awaiting transportation to,

23 or arrives voluntarily to commence service of sentence at, the official detention facility at which

24 the sentence is to be served.'" Id. (quoting 18 U.S.C. § 3585(a)). The Ninth Circuit has

25 "interpret[ed] 'custody' in § 3585(a) as 'legal custody,' meaning that the federal government has

26 both physical custody of the defendant and the primary jurisdiction necessary to enforce the

27 federal sentence." Johnson v. Gill, 883 F.3d 756, 764 (9th Cir. 2018).

28 ///

4

1    "It is well established that if a sovereign takes a defendant into its custody before another

2  sovereign has done so, then the arresting sovereign establishes its primary jurisdiction and may

3  give effect to its sentence before other sovereigns may do so." Johnson, 883 F.3d at 764–65

4  (citing Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991)). "A sovereign's priority

5  terminates when the sentence expires, charges are dismissed, or the prisoner is allowed to go

6  free." Johnson, 883 F.3d at 765. Here, Petitioner was arrested by federal authorities on July 3,

7  2020, and was released on his own recognizance the following day. On July 15, 2020, Petitioner

8  appeared before a federal magistrate judge, posted a $20,000 bond, and was released. On August

9  10, 2020, Petitioner was arrested by local authorities in Los Angeles County for parole

10  violations. "When a defendant or a parolee or a probationer is released from actual physical

11  custody, even for temporary purposes, he may be arrested, tried and convicted by any other such

12  sovereign in the territory in which he may be without the consent of the first sovereign, which

13  may have a judgment against him as yet unsatisfied or which may be seeking to try him." Strand

14  v. Schmittroth, 251 F.2d 590, 599 (9th Cir. 1957) (en banc); accord Johnson, 883 F.3d at 765.

15  Although Petitioner was first arrested by federal authorities, the federal government's priority

16  terminated because Petitioner was released on bond. Therefore, once local authorities arrested

17  Petitioner for parole violations on August 10, 2020, the state of California had primary

18  jurisdiction over Petitioner. See Taylor v. Reno, 164 F.3d 440, 445 (9th Cir. 1998) ("We hold

19  that the federal government lost its primary jurisdiction over Taylor when it released him on his

20  own recognizance. The state then gained primary jurisdiction over him when it arrested him and

21  took him into custody on the state murder charge.").

22    "[W]hen one sovereign transfers a defendant to another sovereign," determining when the

23  federal government obtains primary jurisdiction "turns on whether the state with primary

24  jurisdiction intended to surrender its priority upon transfer or merely transferred temporary

25  control of the defendant to the federal government." Johnson, 883 F.3d at 765. "[A] state's

26  transfer of temporary control of the defendant 'extends no further than it is intended to

27  extend[.]'" Id. (quoting Zerbst v. McPike, 97 F.2d 253, 254 (5th Cir. 1938)).

28  ///

> "When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. Failure to release a prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner."

Thomas, 923 F.2d at 1367 (quoting Crawford v. Jackson, 589 F.2d 693, 695 (D.C. Cir. 1978)). "If the state retains primary jurisdiction, the federal sentence does not commence pursuant to § 3585." Johnson, 883 F.3d at 765. Here, Petitioner was transferred to federal custody on October 15, 2021, pursuant to a petition for writ of habeas corpus ad prosequendum. Therefore, Petitioner was considered "on loan" to the federal authorities, the state retained primary jurisdiction, and the federal sentence did not commence on October 15, 2021, pursuant to 18 U.S. C. § 3585. See Thomas, 923 F.2d at 1367; Johnson, 883 F.3d at 765.

It appears that Petitioner may be basing his claims on the following statements made by the judge during the sentencing hearing:

> Before you proceed, Counsel, I do want to try to make sure the Court has a handle on his time-served issues here. So it's my understanding that at the date of arrest he was given a notice to appear back in July of 2020. That resulted in a remand on a state matter because it was a violation of his probation. He was remanded to state custody on or about August 10th of 2020 where he remained to complete a state sentence until about October 15th of 2021 and then was writted over to federal custody on or about October 29th of 2021 where he began a custodial term that could be credited toward this case. Is that correct?

Sentencing Tr. 3, United States v. Heras Morales, No. 3:20-cr-02184 (S.D. Cal.), ECF No. 78.[3]

Defense counsel affirmed that the court was correct. Defense counsel further stated:

> Circling back to the concurrent times. We did everything we could, the government did everything they could, as did the Court to try to bring Mr. Heras here. We spent a lot of time circling back and forth just chasing to try to get Mr. Heras here, which was none of our faults, but I feel as though the Court was robbed the

---

[3] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted)). See also United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER."); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

1    opportunity at that time to consider granting concurrent time if the
     Court so wanted.

2

3   Sentencing Tr. 5. This language implies that Petitioner's state sentence was already completed

4   and thus, the federal court was unable to impose a federal sentence to run concurrently with

5   Petitioner's state sentence. Indeed, in the sentencing memorandum defense counsel states that

6   "Mr. Heras has completed his term of imprisonment in the state case." Def.'s Sentencing Mem.

7   at 7, Heras Morales, No. 3:20-cr-02184 (S.D. Cal. May 24, 2022), ECF No. 68.[4]

8        However, the record before this Court includes a Los Angeles County Jail Release

9   Transcript, which reflects that Petitioner satisfied his state imprisonment term on August 7, 2022.

10  (Gandy Decl. 3 ¶ 9, Attach. 10.)  "Any statement by the court prescribing when a sentence will

11  begin to run is mere surplusage." Taylor, 164 F.3d at 445 (citing Scott v. United States, 434 F.2d

12  11, 21 (5th Cir. 1970)). "The district court did not have the power to commence [Petitioner]'s

13  federal sentence, regardless of whether the court intended to do so and regardless of what the

14  court said." Taylor, 164 F.3d at 446. Accordingly, the Court finds that Petitioner's federal term

15  of imprisonment began on August 7, 2022.

16       "18 U.S.C. § 3585(b) allows the BOP to grant a federal prisoner credit for time spent in

17  state or federal custody before imposition of his federal sentence, but only if that term of pre-

18  sentence imprisonment 'has not been credited against another sentence.'" Schleining v. Thomas,

19  642 F.3d 1242, 1245 n.2 (9th Cir. 2011) (emphasis deleted) (quoting 18 U.S.C. § 3585(b)).

20  Petitioner contends that the judge credited him eight months towards his federal sentence.

21  However, the Supreme Court has held "that § 3585(b) does not authorize a district court to

22  compute the credit at sentencing," United States v. Wilson, 503 U.S. 329, 334 (1992), and

23  "statements by a district court regarding credit for time served are only recommendations,"

24  Taylor, 164 F.3d at 446 (citing Wilson, 503 U.S. at 333). Moreover, the time Petitioner spent in

25  federal custody before imposition of his federal sentence was credited against his state sentence.

26

27  [4] At the sentencing hearing, the probation officer also informed the court that Petitioner's "updated
    custody credits for his federal time is 223 days," Sentencing Tr. 6, indicating that the time spent in federal
    custody would be credited toward Petitioner's federal sentence, and thus, had not been credited against
28  another sentence (i.e., the state sentence was already completed).

1   (ECF No. 15 at 3.) Therefore, the BOP is not able to credit Petitioner for the time Petitioner

2   spent in federal custody before imposition of his federal sentence. See Wilson, 503 U.S. at 337

3   ("Congress made clear that a defendant could not receive a double credit for his detention

4   time.").

5          The Court appreciates the difficult situation in which Petitioner finds himself. It appears

6   that the federal sentencing judge was under the impression that Petitioner's state sentence was

7   fully completed and thus, Petitioner would receive credit toward his federal sentence for the time

8   he spent in federal custody before imposition of his federal sentence. However, as set forth

9   above, Petitioner was transferred to federal custody pursuant to a petition for writ of habeas

10  corpus ad prosequendum, the state retained primary jurisdiction, Petitioner satisfied his state

11  imprisonment term on August 7, 2022, the time Petitioner spent in federal custody before

12  imposition of his federal sentence was credited toward his state sentence, and Petitioner is not

13  entitled to double credit. Accordingly, based on the record before this Court, the BOP is not

14  withholding proper application of jail credit, and Petitioner is not entitled to habeas relief under

15  28 U.S.C. § 2241.

16                                              **III.**

17                                      **RECOMMENDATION**

18         Based on the foregoing, the undersigned HEREBY RECOMMENDS that Respondent's

19  motion to dismiss (ECF No. 15) be DENIED and the petition for writ of habeas corpus be

20  DENIED.

21         This Findings and Recommendation is submitted to the assigned United States District

22  Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

23  Rules of Practice for the United States District Court, Eastern District of California. Within

24  **THIRTY (30) days** after service of the Findings and Recommendation, any party may file

25  written objections with the court and serve a copy on all parties. Such a document should be

26  captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the

27  objections shall be served and filed within fourteen (14) days after service of the objections. The

28  assigned United States District Court Judge will then review the Magistrate Judge's ruling

1   pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within

2   the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v.</u>

3   <u>Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th

4   Cir. 1991)).

5
    IT IS SO ORDERED.
6

7       Dated:   **July 25, 2024**                    /s/ *Eric P. Grosjean*
8                                              UNITED STATES MAGISTRATE JUDGE